HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROLAND MA,

    Plaintiff,

v.

ESTHER PARK DENSMORE and
WASHINGTON CARE SERVICES,

    Defendants,

v.

WALDEN UNIVERSITY, LLC.,

    Third-Party Defendant.

Case No. 2:20-cv-1355-RAJ

ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER

## I. INTRODUCTION

This matter comes before the Court on Plaintiff's Motion for an Emergency Temporary Restraining Order. Dkt. # 2. Having considered the submissions of the parties, the relevant portions of the record, and the applicable law, the Court finds that oral argument is unnecessary. For the reasons below, the motion is **DENIED**.

## II. BACKGROUND

Washington Care Center ("WCC") is a long-term care facility located in Seattle, Washington. Dkt. # 24 ¶ 1. Plaintiff Roland Ma was a student-intern at that facility, and though his internship was unpaid, he received school credit. *Id.* ¶ 3. As an intern, he was only allowed to work under the supervision of WCC employee, Wendy Li, and he was

ORDER – 1

not to provide any direct patient care. *Id.* Instead, he worked with Ms. Li to "assist with patient discharges, psychosocial visits for assigned clients, [and] Medicaid applications." *Id.* Nearly three months after Mr. Ma began his internship, WCC started experiencing "concerning incidents." Dkt. # 22 at 3-7.

First, on August 7, 2020, Mr. Ma contacted Ms. Li and WCC administrator, Defendant Esther Densmore, demanding that another WCC employee be investigated. Dkt. # 24 ¶ 4. The other employee, Rachel Mei Trotter, had supposedly made multiple harassing calls to Mr. Ma. *Id.* Mr. Ma also claimed that Ms. Trotter harassed him through WCC's internal text messaging platform, "doc halo." *Id.* WCC investigated his allegations. *Id.* Ms. Trotter confirmed through her cell phone company that in fact no calls were made to Mr. Ma's number. *Id.* And because WCC could access all doc halo messaging, WCC confirmed that Ms. Trotter did not send any messages to Mr. Ma on that platform. *Id.* Later, Ms. Trotter herself began receiving multiple, late-night and early-morning calls to her personal cell phone, which WCC had reason to believe were from Mr. Ma. *Id.*

Second, on August 12, 2020, in an unrelated incident, Mr. Ma apparently filed a false resident report. *Id.* ¶ 5. Mr. Ma reported that a resident, FC, was suicidal. *Id.* WCC interviewed witnesses and FC, who denied threatening suicide. *Id.* After investigation, WCC determined that the reported suicide tool was merely a piece of arm exercise equipment and that Mr. Ma's report was inaccurate. *Id.*

Finally, Mr. Ma allegedly used a forged subpoena to allow unauthorized access to the WCC facility. Under Washington's COVID-19 guidelines for nursing homes, non-employees and non-residents are not allowed to visit WCC, including resident family members. *Id.* ¶ 2. Despite those guidelines, FC's daughter, Beth Ku, demanded in-person contact with her mother, which WCC could not allow. *Id.* On September 8, 2020, Ms. Ku filed a guardianship action related to her mother. *Id.* ¶ 6. That same day, Mr. Ma told his supervisor that he purportedly found a subpoena from the guardianship action,

ORDER – 2

allowing Ms. Ku to visit her mother. *Id.* ¶ 7. Ms. Ku used the subpoena (and another subpoena bearing a different date) multiple times to access the facility. *See id.* ¶¶ 7-8; Dkt. # 20 ¶¶ 6-7. On September 10, 2020, WCC received an email from King County Superior Court indicating that the subpoena was not a valid court order, as it was forged. Dkt. ## 24-5, 24-6. After learning that the subpoena was forged, Ms. Densmore asked Mr. Ma how he found the subpoena, and he claimed that he downloaded it from the "King County Superior Court ECRU" while "searching to confirm the facility's not-for profit status." Dkt. # 24 ¶¶ 7, 9.

On September 11, 2020, Ms. Densmore suspended Mr. Ma, pending WCC's investigation of the forged subpoenas and his connection to FC and Ms. Ku. *Id.* ¶ 10. WCC's lawyer informed Mr. Ma that, given the pandemic, forging a subpoena to allow others to enter a restricted facility posed a serious threat to residents and employees. *Id.* WCC suspended his access to his WCC email and WCC's electronic medical records. *Id.*

Three days later, Mr. Ma filed an action in this Court and moved for a temporary restraining order ("TRO"). Dkt. # 2. Mr. Ma seeks to enjoin WCC from permanently suspending him. *Id.* According to Mr. Ma, he was suspended for "an unexplained internal rules' violation" and was punished "without having received notice and a fair opportunity to dispute the allegation[s] against [him]." *Id.* at 2. He claims that he stands to lose his tuition and to delay his graduation by one year or more. Dkt. # 7 at 3. He also claims that if he is not re-instated, he will be "unable to assist [FC] to be transferred out to another long-term care facility in a timely manner to avoid further abuse." Dkt. # 2 at 3.

On September 18, 2020, Defendants Ms. Densmore and Washington Care Services appeared in this matter, Dkt. ## 16-17, and responded to the motion for a TRO, Dkt. # 22.

### III. LEGAL STANDARD

Like a preliminary injunction, issuance of a TRO is "an extraordinary remedy

ORDER – 3

never awarded as of right." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Under Federal Rule of Civil Procedure 65(b), a party seeking a TRO must make a clear showing (1) of a likelihood of success on the merits, (2) of a likelihood of suffering irreparable harm in the absence of preliminary relief, (3) that the balance of hardship tips in her favor, and (4) that a temporary restraining order in is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008) (articulating standard for preliminary injunction); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that preliminary injunction and temporary restraining order standards are "substantially identical").

## IV.  DISCUSSION

Exactly what theory Mr. Ma bases this motion on is unclear. Mr. Ma, at bottom, claims that he was permanently suspended from his internship without due process. Dkt. # 2 at 2. The motion cites the Fifth and Fourteenth Amendments to the United States Constitution and Article I of the State of Washington Constitution, *id.*, so the Court will assume that Mr. Ma's request for injunctive relief is based on those texts.

### A.      Likelihood of Success on the Merits

#### i.      Fifth and Fourteenth Amendments

Mr. Ma may not seek relief directly under the United States Constitution; he must use 42 U.S.C. § 1983. *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992) ("Plaintiff has no cause of action directly under the United States Constitution. We have previously held that a litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983."). The Court, then, construes Mr. Ma's request as one under § 1983. *Bank of Lake Tahoe v. Bank of Am.*, 318 F.3d 914, 917 (9th Cir. 2003) (construing a claim for "equal protection" violations "under the umbrella of § 1983").

"To state a claim for relief in an action brought under § 1983, [plaintiffs] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law."

ORDER – 4

*Heineke v. Santa Clara Univ.*, 965 F.3d 1009, 1012 (9th Cir. 2020) (alteration in original) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999)).  Section 1983 does not reach "merely private conduct, no matter how discriminatory or wrong." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999) (quoting *Am. Mfrs.*, 526 U.S. at 50).

A court begins with the presumption that private acts do not constitute state action. *Heineke*, 965 F.3d at 1012.  To overcome that presumption, a plaintiff must show that the state "has exercised coercive power or has provided such significant encouragement that the challenged action must be considered that of the state [or] the state knowingly accepts the benefits derived from unconstitutional behavior." *Id.* (internal quotation marks and citations omitted).

Although Mr. Ma claims that he was deprived of his constitutional rights, he has not identified a state actor.  WCC is a long-term care facility.  Dkt. # 24 ¶ 1.  And Ms. Densmore is an employee at that facility.  *Id.*  WCC is owned not by a governmental entity but by a limited liability company, Washington Care Center Operator LLC.  *Id.*  Nothing in Mr. Ma's complaint or motion explains why the actions of WCC, a private institution, may fairly be attributed to the state.  At most, Mr. Ma claims, without evidence, that WCC receives both state and federal funds.  Dkt. # 7 at 3.  This is insufficient, however, to show state action.  *Ascherman v. Presbyterian Hosp. of Pac. Med. Ctr., Inc.*, 507 F.2d 1103, 1104-05 (9th Cir. 1974) (holding that private hospital's receipt of public funds and tax-exempt status were insufficient to establish state action).  Thus, Mr. Ma fails to show a likelihood of success on the merits for any Fifth or Fourteenth Amendment violations.

### ii.   Article 1 of the Constitution of the State of Washington

Apparently, Mr. Ma also seeks relief under the Constitution of the State of Washington.  Dkt. # 2 at 2.  He claims that he was deprived of due process in violation of Article I, Sections 3, 5, and 9.  *Id.*

ORDER – 5

1    To start, it is unclear whether Mr. Ma may assert claims directly under
2    Washington's constitution at all. Washington courts "have consistently rejected
3    invitations to establish a cause of action for damages based upon constitutional violations
4    without the aid of augmentative legislation." *Blinka v. Washington State Bar Ass'n*, 36
5    P.3d 1094, 1102 (Wash. Ct. App. 2001) (internal quotation marks and alterations
6    omitted) (collecting cases). But neither party addresses whether this rule extends to
7    causes of action for injunctive relief, not damages, as Mr. Ma seeks here. Dkt. # 2 at 3-4.
8    In any event, the Court need not decide that issue as the sections that Mr. Ma invokes are
9    plainly inapplicable.

    Both Sections 3 and 5 of the state constitution require state action. *State v.
*McCullough*, 784 P.2d 566, 568 (Wash. Ct. App. 1990) ("[I]n the civil context,
Washington has refused to find a violation of the state due process provision absent state
action.") (Wash. Const. art. I, § 3); *Southcenter Joint Venture v. Nat'l Democratic Policy
Comm.*, 780 P.2d 1282, 1288 (Wash. 1989) ("[A]lthough an express reference to "state
action" is absent from the free speech provision of our state constitution, a "state action"
limitation is implicit therein.") (Wash. Const. art. I, § 5). As explained above, Mr. Ma
has failed to show state action.

    And Section 9 of the state constitution applies to criminal—not civil—cases.
Wash. Const. art. I, § 9 ("No person shall be compelled *in any criminal case* to give
evidence against himself, or be twice put in jeopardy for the same offense.") (emphasis
added). WCC's internal investigation of Mr. Ma was not in the context of a criminal
proceeding, therefore this section does not apply.

    In sum, Mr. Ma fails to show a likelihood of success on the merits on his state and
federal claims. Further, given that Mr. Ma fails to clearly identify the legal basis for his
request and given that the legal bases that he does allude to are plainly inapplicable, the
Court also finds that he has not raised "serious questions going to the merits." *All. for the
Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Failure to satisfy this

ORDER – 6

prong is fatal to Mr. Ma's motion. *Winter* requires a plaintiff to establish all four prongs. *Haskell v. Harris*, 745 F.3d 1269, 1271 (9th Cir. 2014). The first prong, likelihood of success on the merits, is the "most important," and when "a plaintiff has failed to show the likelihood of success on the merits, [courts] 'need not consider the remaining three [*Winter* elements].'" *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (second alteration in original) (quoting *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013)). Because Mr. Ma has failed to establish the first *Winter* prong, the Court declines to address the other three.

## V. CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's Motion for an Emergency Temporary Restraining Order. Dkt. # 2.

DATED this 24th day of September, 2020.

*[signature: Richard A. Jones]*

The Honorable Richard A. Jones
United States District Judge

ORDER – 7