HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROLAND MA,

Plaintiff,

v.

ESTHER PARK DENSMORE and WASHINGTON CARE SERVICES,

Defendants,

v.

WALDEN UNIVERSITY, LLC.,

Third-Party Defendant.

Case No. 2:20-cv-1355-RAJ

ORDER DENYING SECOND MOTION FOR TEMPORARY RESTRAINING ORDER

## I. INTRODUCTION

This matter comes before the Court on Plaintiff's Motion for a Temporary Restraining Order & a Preliminary Injunction. Dkt. # 48. Having considered the submissions of the parties, the relevant portions of the record, and the applicable law, the Court finds that oral argument is unnecessary. For the reasons below, the motion is **DENIED**.

## II. BACKGROUND

Washington Care Center ("WCC") is a long-term care facility located in Seattle, Washington. Dkt. # 36 at 1. Plaintiff Roland Ma was a student-intern at that facility, and though his internship was unpaid, he received school credit. *Id.* As an intern, he was

only allowed to work under the supervision of a WCC employee, and he was not to provide any direct patient care. *Id.* at 1-2. Instead, his role was to "assist with patient discharges, psychosocial visits for assigned clients, [and] Medicaid applications." *Id.* at 2. Nearly three months after Mr. Ma began his internship, WCC started experiencing the following "concerning incidents": Mr. Ma falsely accused a female WCC employee of harassment, made harassing calls to the same employee, filed a false resident report that a resident (named "FC") was threatening suicide, and forged a subpoena to enable FC's daughter (Beth Ku) to access the WCC facility despite Washington's COVID-19 guidelines for nursing homes. *Id.* at 2-3.

WCC suspended Mr. Ma pending its investigation of the forged subpoenas and his connection to FC and Ms. Ku. *Id.* at 3. Days later, Mr. Ma filed an action in this Court and moved for a temporary restraining order ("TRO") to enjoin WCC from suspending him. Dkt. # 2. The Court denied that motion for failing to show a likelihood of success on the merits. Dkt. # 36 at 6-7.

Meanwhile, Mr. Ma's school, Walden University, LLC[1] ("University"), had begun investigating Mr. Ma's actions for code of conduct violations. Dkt. # 55 ¶¶ 10-11. The University's code of conduct and other policies address "expectations of students concerning nondiscrimination, nonharassment [sic], professional conduct, and academic integrity"; all students agree to abide by the policies. *Id.* ¶ 4. If a student is suspected of violating a policy, the University investigates the violation under a preponderance of the evidence standard, and the student may respond to the allegations. *Id.* ¶¶ 5-7. The University then decides whether the student in fact violated the policy and if so notifies the student of the decision, the sanction, and the appeals process. *Id.* ¶¶ 8-9.

Mr. Ma was the subject of two University investigations. *Id.* ¶ 10. The first began

[1] Mr. Ma asserts claims against Walden University, LLC as a "Third-Party Defendant." Dkt. # 6. The Court is skeptical that the University is properly named as a third-party defendant under Rule 14 of the Federal Rules of Civil Procedure. But the parties have not addressed that issue, and the Court need not resolve it for purposes of this motion.

on September 23, 2020, the day before the Court denied Mr. Ma's motion for a TRO. *Id.* ¶ 10. The University sent Mr. Ma a letter, claiming that he had violated a host of policies when he (1) faxed about 50 pages of FC's patient records to a University email address and (2) sent an email containing photographs of FC to several recipients—all without a Health Insurance Portability and Accountability Act ("HIPAA") release. *Id.* ¶ 11; Dkt. # 55-1. In his response, Mr. Ma suggested that he was authorized to disclose such information under an Authorization for Release of Medical Information. Dkt. # 55-2; Dkt. # 48. That document was signed by Ms. Ku in her apparent capacity as FC's agent under a durable power of attorney. Dkt. # 48. The University, however, doubted the document's authenticity and reliability. Dkt. # 55 ¶ 13. It could not determine whether Ms. Ku in fact had a valid power of attorney, it was not clear that the authorization was in place when Mr. Ma sent the fax and email, and Mr. Ma himself acted as the notary for the document but failed to provide a notary signature. *Id.*

The second investigation began five days after the first. *Id.* ¶ 15. Based on the filings in this lawsuit, the University learned of Mr. Ma's behavior at WCC and began another investigation for school policy violations. *Id.* Like the first investigation, the University sent Mr. Ma a letter listing the allegations against him. Dkt. # 55-3. The University cited many of the same incidents at the center of Mr. Ma's last TRO—his alleged harassment of a WCC employee, filing of a false resident report, use of a forged subpoena, and stealing of credit card information. *Id.*; Dkt. ## 23, 24, 36. In response, Mr. Ma asserted his constitutional rights and the legal precepts of "frustration of purpose" and "dirty hands" and more. Dkt. # 55 ¶ 18.

The University determined that Mr. Ma failed to refute the allegations against him and that he egregiously violated the University's policies. *Id.* ¶ 19. On October 2, 2020, the University dismissed Mr. Ma and withdrew him from all his courses. Dkt. # 55-4. Mr. Ma, however, was informed that he could appeal the decision within the next 30 days. *Id.* The next day, Mr. Ma filed this motion for a TRO. Dkt. # 48. He requests that

the University be enjoined from expelling him. *See* Dkt. # 49 at 2.

## III. LEGAL STANDARD

Like a preliminary injunction, issuance of a TRO is "an extraordinary remedy never awarded as of right." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Under Federal Rule of Civil Procedure 65(b), a party seeking a TRO must make a clear showing (1) of a likelihood of success on the merits, (2) of a likelihood of suffering irreparable harm in the absence of preliminary relief, (3) that the balance of hardship tips in her favor, and (4) that a temporary restraining order in is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008) (articulating standard for preliminary injunction); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that preliminary injunction and temporary restraining order standards are "substantially identical").

## IV. DISCUSSION

Mr. Ma appears to base this motion on several grounds: violation of Section 504 of the Rehabilitation Act, retaliation under the Americans with Disabilities Act ("ADA"), and violation of his constitutional rights under Section 1983. Dkt. # 53 at 2.

### A. Likelihood of Success on the Merits

#### i. Section 504 of the Rehabilitation Act

A plaintiff bringing suit under section 504 must show that (1) he is a qualified individual with a disability, (2) he was denied "a reasonable accommodation that [he] needs in order to enjoy meaningful access to the benefits of public services," (3) he was denied the benefits of a program by reason of the disability, and (4) the program providing the benefit receives federal financial assistance. *A.G. v. Paradise Valley Unified School Dist. No. 69*, 815 F.3d 1195, 1204 (9th Cir. 2016); *Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010).

Mr. Ma was dismissed from Walden University for violating many of its policies, violations that the University found egregious. Dkt. # 55-4 at 1-2. Mr. Ma has offered

no argument or evidence to show that his dismissal was in any way related to a disability or a reasonable accommodation.

**ii. Retaliation Under the ADA**

To establish retaliation under the ADA, "an employee must show that (1) he or she engaged in a protected activity; (2) suffered an adverse . . . action; and (3) there was a causal link between the two." *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004).

Mr. Ma has not identified a protected activity. The University supposes, *arguendo*, that Mr. Ma's filing of a complaint with the Office of Civil Rights could be a protected activity. Dkt. # 54 at 11. Even if that were the case, Mr. Ma's retaliation claim would still fail. He has not shown how his complaint with the Office of Civil Rights was in any way related to his dismissal. Again, his dismissal was based on several University policy violations, not a disability or protected activity.

As a matter of clarification, in his complaint, Mr. Ma claims that the University failed to protect him and "enforce the accommodation as stated, pursuant to . . . APA [sic] Title II." Dkt. # 7 at 2. The Court notes that Title II of the ADA applies to "public entit[ies]." 42 U.S.C. § 12132. Public entities include only state or local government; "any department, agency, special purpose district, or other instrumentality of a State or States or local government"; and "the National Railroad Passenger Corporation, and any commuter authority." *Id.* § 12131. Given that Walden University is a private university, Title II plainly does not apply. Mr. Ma has not shown that the University is an "instrumentality" of a state or local government or is otherwise a "public entity" as defined by the statute.

**iii. Section 1983**

Mr. Ma may not seek relief directly under the United States Constitution; he must use 42 U.S.C. § 1983. *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992) ("Plaintiff has no cause of action directly under the United States Constitution.

We have previously held that a litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983.”). “To state a claim for relief in an action brought under § 1983, [plaintiffs] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law.” *Heineke v. Santa Clara Univ.*, 965 F.3d 1009, 1012 (9th Cir. 2020) (alteration in original) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999)). Section 1983 does not reach “merely private conduct, no matter how discriminatory or wrong.” *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999) (quoting *Am. Mfrs.*, 526 U.S. at 50).

A court begins with the presumption that private acts do not constitute state action. *Heineke*, 965 F.3d at 1012. To overcome that presumption, a plaintiff must show that the state “has exercised coercive power or has provided such significant encouragement that the challenged action must be considered that of the state [or] the state knowingly accepts the benefits derived from unconstitutional behavior.” *Id.* (internal quotation marks and citations omitted).

As was the case in his previous motion for a TRO, Mr. Ma has failed to identify a state actor. Walden University is a private university. Dkt. # 54 at 11. Despite that, Mr. Ma argues that the University is a state actor under § 1983 and puts forth several tests: public function test, joint action test, compulsion test, and governmental nexus test. Dkt. # 53 at 3. Although he cites these tests, he hardly explains how they apply let alone support his explanation with argument and evidence. His arguments are based on pure conjecture. *See, e.g.*, Dkt. # 53 at 4-5 (“[T]he strongest point for argument in the Joint Action Test is Laureate Education, Inc., where 1/3 of the trustees represent the state government, so that the company can be B Lab-certified and also be publicly traded on NASDAQ. As of today, the University is still part of the Laureate Education, Inc.”) (applying the joint action test); *id.* at 5 (“There is some connection to the State ‘coercive influence’ or ‘significant encouragement’ as for the state action, as the graduation rate

and overall grades that obligates the state to continue funding for a college, visit stand grants, instead of annual appropriations at the discretion of the legislature, or instead of discretionary renewal of a contract.") (applying the compulsion test).

Mr. Ma has not shown why a private investigation conducted by a private university may be fairly attributed to the state.

In sum, Mr. Ma fails to show a likelihood of success on the merits. The Court also finds that he has not raised "serious questions going to the merits." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Failure to satisfy this prong is fatal to Mr. Ma's motion. *Winter* requires a plaintiff to establish all four prongs. *Haskell v. Harris*, 745 F.3d 1269, 1271 (9th Cir. 2014). The first prong, likelihood of success on the merits, is the "most important," and when "a plaintiff has failed to show the likelihood of success on the merits, [courts] 'need not consider the remaining three [*Winter* elements].'" *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (second alteration in original) (quoting *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013)). Because Mr. Ma has failed to establish the first *Winter* prong, the Court declines to address the other three.

## V. CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's Motion for a Temporary Restraining Order & a Preliminary Injunction. Dkt. # 48.

DATED this 19th day of October, 2020.

The Honorable Richard A. Jones
United States District Judge